UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE COTTRELL,

                    Petitioner,                          Case Number 08-10521
                                                    Honorable David M. Lawson

v.

SHERRY BURT,

                    Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Carrie Everett Cottrell was convicted by a jury in the Eaton County, Michigan circuit court of possession of 50 grams or more of cocaine and possession of marijuana and sentenced to prison. He alleges in his *pro se* petition for writ of habeas corpus that he is in custody in violation of the Constitution and laws of the United States because his right to an impartial jury was denied when a juror told the rest of the jury panel prior to deliberations that she had seen the petitioner on a "Most Wanted" television program, and his trial counsel was ineffective for failing to request a jury instruction on the lesser offense of simple possession of cocaine. The respondent contends that the state court properly applied federal law when it rejected these claims. The Court agrees and will deny the petition.

I.

At the petitioner's jury trial, Shaun Lee Lewis testified that he was a bondsman and was attempting to locate the petitioner so he could arrest him on an outstanding warrant. Lewis and members of the Eaton County Sheriff Department eventually located the petitioner at a restaurant in Delta Township in Eaton County. Lewis and deputy Brian Thomas approached the petitioner

inside the restaurant and told him he was under arrest. Lewis and Thomas escorted the petitioner out of the restaurant to a police car.

Deputy Thomas testified that when he searched the petitioner at the time of the arrest, he found four plastic bags containing suspected drugs in the front pocket of the petitioner's sweatshirt. One smaller bag appeared to contain crack cocaine and the other appeared to contain white powder cocaine. Thomas also discovered two larger bags that appeared to contain marijuana. After Thomas read the petitioner his *Miranda* rights, the petitioner admitted that the drugs belonged to him.

Bradley Choate, a laboratory analyst at the Michigan State Police Crime laboratory, testified that he weighed and analyzed the drugs submitted in this case. One bag contained 31.52 grams of cocaine; another bag contained 19.35 grams of cocaine; and a third contained 2.16 grams of marijuana.

Rashawnda Alvarado, the petitioner's girlfriend and mother of two of his children, testified for the defense that she was at the restaurant with the petitioner. She said that the cocaine found on the petitioner belonged to her, and she had put it in the petitioner's pocket without his knowledge.

The petitioner denied having any drugs in his sweatshirt when he went to the restaurant. When he saw Deputy Thomas pull the drugs out of his pocket, he figured that his girlfriend had put them there. He admitted telling Thomas that the drugs were his, but he said he lied because he did not want to get his girlfriend in trouble.

Bryan Seratt, an investigator for the Eaton County Prosecutor's Office, testified in rebuttal that he interviewed Rashawnda Alvarado on the first day of trial before she testified. She told him that she did not want to be in the courtroom, that the drugs were not hers, and that on the day of the incident she saw the petitioner with the drugs before they went to the restaurant.

-2-

Prior to sentencing, the petitioner moved for a new trial on the grounds of jury misconduct. Defense counsel claimed that when he interviewed the jury after the verdict, one of the jurors told him that she recalled seeing the petitioner on a local "most wanted" television program. The juror said that she realized she recognized the petitioner as being the person on that television show on the first day of trial. The juror also told defense counsel that when she recognized the petitioner, she went back to the jury room and told the other jurors about her discovery and discussed it with them.

The prosecutor opposed the petitioner's motion for new trial, asserting that the petitioner had not attached to his motion any affidavits from the jurors, without which the court could not determine the impact, if any, such information may have had on deliberations. The prosecutor asserted that without such proffer, the petitioner could not demonstrate that the information had an impact on the jury's deliberations. In response, the petitioner submitted  affidavits from both defense counsel and the trial court's law clerk outlining what both remembered of the conversation with the jurors in the courtroom after the verdict. The petitioner did not, however, submit any affidavits from the jurors.

The trial court denied the motion for new trial on July 20, 2005, stating from the bench:

I'm going to deny the motion without more. We may never know more. I think it's a close call, but I can't say—no one is guaranteed under our Constitution or the case law a perfect trial. This was not a perfect trial. I have yet to see one. But I can't say with any certainty at all that it meets the test in the cases that are cited.

I don't believe it has been established that it affected the impartiality of the jurors or the jury or disqualified the jury from exercising the powers of reason and judgment. I can't find any substantial harm that was done to the defendant. I, I, there's not enough of a nexus here. So we're going to proceed to sentencing.

Sentencing Tr., July 20, 2005, at 27-28.

The court the sentenced the petitioner as a second controlled substance offender under Michigan Compiled Laws 333.7413(2) to 99 to 480 months in prison for the cocaine conviction and 24 to 48 months in prison for the marijuana conviction. The petitioner presently is serving his sentence at the Parnall Correctional Facility in Jackson, Michigan.

Following his conviction and sentence, the petitioner filed a direct appeal raising these arguments:

I.    Defendant was denied his state and federal constitutional right to a fair trial when one juror had thought she had recognized defendant from television's "Most Wanted," had not said anything to the court during voir dire, but had told other members of the jury.

II.   Defendant's attorney was ineffective as counsel because there were serious questions as to the actual weight of the controlled substance and Defendant's attorney failed to request a simple possession instruction to which defendant was entitled.

III.  The trial court erred in sentencing defendant to 28 to 48 months for marijuana where the statute only provides for double the 12-month maximum.

Appellant's Br. on Appeal to Mich. Ct. App., Feb 9, 2006, at 10, 12.

The Michigan Court of Appeals affirmed the convictions in an unpublished per curiam opinion, but remanded the case to correct the sentence on the marijuana conviction. *People v. Cottrell*, No. 264991, 2007 WL 283705 (Mich. Ct. App. Feb. 1, 2007).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court that raised the first two claims that he raised in the court of appeals. On June 29, 2007, the supreme court directed the parties to submit supplemental briefs addressing whether the prosecutor admitted that the defense counsel's representations regarding the juror's statement were accurate. After

-4-

receiving the supplemental pleadings, the supreme court denied the petitioner's application for leave to appeal. *People v. Cottrell*, 480 Mich. 916, 739 N.W.2d 862 (2007).

The petitioner's *pro se* habeas corpus petition filed in this Court under 28 U.S.C. § 2254 raises two claims:

> I.      Petitioner was denied his state an[d] federal constitutional right to a fair trial when one juror had thought she ha[d] recognized Petitioner from television[']s "Most Wanted" had not said anything to the court during voir dire, but told other members of the jury.
>
> II.     Petitioner[']s trial attorney was ineffective as counsel when he failed to request[] "simple possession" as an instruction to which Petitioner was entitled after the court imposed a lesser included offense that infringed upon Petitioner[']s defen[s]e at trial.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)

(internal quotes omitted)).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409.  The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law.  Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  This distinction creates a substantially higher threshold for obtaining relief than *de novo* review.  AEDPA thus imposes a highly deferential standard for evaluating state-court rulings,

and demands that state-court decisions be "given the benefit of the doubt."  *Renico v. Lett*, ---U.S.

----, ----, 130 S.Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial

on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four

hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was

imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other

measures to confirm the foreperson's prediction that a unanimous verdict would not be reached")

(internal quotation marks and citations omitted); *see also Knowles v. Mirzayance*, --- U.S. ----, ----,

129 S.Ct. 1411, 1419 (2009) (noting that the Supreme "Court has held on numerous occasions that

it is not 'an unreasonable application of clearly established Federal law' for a state court to decline

to apply a specific legal rule that has not been squarely established by this Court") (*quoting Wright

v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Phillips v. Bradshaw*, 607 F.3d 199, 205

(6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d

587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*,

433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

## A.

The petitioner first claims that he was denied his right to a fair and impartial jury when one

juror thought she recognized the petitioner from a "most wanted" program and communicated that

belief to the other jurors on the first day of trial.  The respondent argues that the state court

adjudication of this claim was not objectively unreasonable.

When the petitioner raised this claim in the state courts, the state trial judge, although

acknowledging that the issue presented a "close call," was not convinced that the information

affected the jurors' impartial judgment.  The Michigan Court of Appeals never directly addressed

whether the extraneous information deprived the petitioner of a fair trial. Instead, that court relied

on the petitioner's failure to present first-hand evidence of juror influence. The court stated:

> Defendant first argues the trial court should have granted his motion for a new trial on the ground that the jury's verdict had been affected by an extraneous influence. Specifically, defendant asserts that a juror told other jurors she had seen defendant on a "*Most Wanted*" style television broadcast. According to defense counsel, one juror stated, after the verdict, that she had seen defendant on "Lansing's most wanted television show," that she recognized him from that broadcast on the first day of trial, and that she had shared this information with other jurors. Defendant produced affidavits about these statements from defense counsel and from the trial judge's law clerk, who had been present during defense counsel's post-trial discussion with the jurors. However, these affidavits relate to statements allegedly made by jurors, and as such they are plainly hearsay. Although we are appalled by the prospect of such a potentially prejudicial conversation amongst the jurors, we have no competent record evidence, such as affidavits from the jurors themselves, to confirm that the alleged conversation actually took place.
>
> Hearsay evidence is incompetent to establish an improper extraneous influence on the jury, *People v. Budzyn*, 456 Mich. 77, 92 n 14; 566 N.W.2d 229 (1997), and the trial court therefore did not abuse its discretion by denying defendant's motion for a new trial. *See People v. Cress*, 468 Mich. 678, 691; 664 N.W.2d 174 (2003).

*Cottrell*, 2007 WL 283705 at *1-2 (footnote omitted).

One question that arises from a decision on this ground is whether the petitioner ought to be

able to present more evidence on the subject in this Court. The Court does not believe he should.

"Under AEDPA, evidentiary hearings are not mandatory." *Johnson v. Mitchell*, 585 F.3d 923, 934

(6th Cir. 2009) (quoting *Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003)); *cf. Schriro v.*

*Landrigan*, 550 U.S. 465, 474 (2007) ("Because the deferential standards prescribed by § 2254

control whether to grant habeas relief, a federal court must take into account those standards in

deciding whether an evidentiary hearing is appropriate.") The AEDPA permits a habeas petitioner

to introduce new evidence in federal court "only if [the petitioner] was not at fault in failing to

develop that evidence in state court, or (if he was at fault) if the conditions prescribed in §

2254(e)(2) were met." *Holland v. Jackson*, 542 U.S. 649, 652-53 (2004) (citing *Williams v. Taylor*, 529 U.S. 420, 431-37 (2000)); *see also Garner v. Mitchell*, 502 F.3d 394, 405-06 (6th Cir. 2007), *rev'd on other grounds*, 557 F.3d 257 (6th Cir. 2009). Section 2254(e)(2) defines "fault" as occurring where the petitioner "has failed to develop the factual basis of a claim in State court proceedings." The Supreme Court has explained that "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 432; *see also Ivory v. Jackson*, 509 F.3d 284, 297-98 (6th Cir. 2007). "Diligence" requires "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 435.

Under current law, then, when a petitioner does not develop a factual record to support his claim in the state courts, he may do so in federal court only if "the claim relies on . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; *and* . . . the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2) (emphasis added).

The question whether there was sufficient proof of jury contamination was front and center from the outset. The state court prosecutor resisted the petitioner's motion for new trial in the trial court on the ground that the record contained no affidavits from jurors. The petitioner elected to support his claim in the state courts with affidavits from the trial court's law clerk and trial counsel, but none from jurors. At no point during the proceedings in the trial court or the Michigan Court of Appeals did the petitioner seek a hearing to introduce additional factual support for his claim; nor did he ever offer a reason why such evidence was not available.

The Michigan Court of Appeals ultimately rejected the petitioner's claim, in part, because it lacked competent record support. The petitioner is not entitled to an evidentiary hearing on his claim that the jury improperly considered extraneous information or otherwise committed misconduct, because the petitioner failed to develop the factual basis for that claim in state court despite an opportunity to do so. The AEDPA creates a high bar for a petitioner seeking to present new evidence to a habeas court. In this case, the petitioner has not met the challenge.

Turning to the merits of the petitioner's claim on the present record, the Sixth Amendment right to trial by jury includes the right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961); *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985). In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court recognized that juries in criminal cases must be free from extraneous influences. The Court wrote:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.

*Id*. at 229. The *Remmer* Court established a framework for addressing claims that a jury was exposed to outside influence:

> The trial court should not decide and take final action *ex parte* on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Id*. at 229-30.

In *Remmer*, the Supreme Court established a right to a hearing when a colorable allegation of jury contamination is raised. The issue raised by the petitioner here is not that he was deprived of such a hearing, however. Instead, he insists that he was prejudiced by information that a juror

-10-

discovered about his outstanding warrant from an extrajudicial source.  The Due Process Clause does not permit a jury to decide a case using extraneous information.  "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The state trial judge was satisfied that the outside information did not affect the verdict in this case.  "[S]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion."  *United States v. Rigsby*, 45 F.3d 120, 125 (6th Cir. 1995) (quoting *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985)).  In a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[] a 'high measure of deference.'" *Mahoney v. Vondergritt*, 938 F.2d 1490, 1492 (1st Cir. 1991) (quoting *Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

Claims concerning the effect of extraneous influences upon the jury during deliberations are subject to a harmless error analysis.  *See Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003); *see also Nevers v. Killinger*, 169 F.3d 352, 370 (6th Cir. 1999), *abrogated on other grounds, Williams v. Taylor*, 529 U.S. 362 (2000).  On habeas review, a constitutional error that implicates trial procedures is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

The record contains ample support for the conclusion that exposure to the "Most Wanted" report probably did not affect the verdict.  First, the fact that the petitioner was "wanted" by the

authorities was part of the evidence presented at trial.  The charges arose because drugs were found

on the petitioner when he was arrested on an outstanding warrant.  Second, the evidence of the

petitioner's guilt was overwhelming.  It was undisputed that the cocaine and marijuana were found

in his pocket.  The petitioner's only defense was that his girlfriend put the drugs in his pocket at the

restaurant without his knowledge.  Third, the true factual contest at trial had little to do with the

petitioner's "wanted" status.  His defense that the drugs were planted by his girlfriend was

contradicted by his own admission to police that the drugs belonged to him and his girlfriend's

statement to an investigator that the drugs were not hers and she saw the petitioner with the drugs

before they went to the restaurant.  That statement contradicted her trial testimony.  It is unlikely that

the jury's resolution of that conflict was affected by the extraneous information.  Even if the jurors

believed that the petitioner was mentioned on a television show, that information probably did not

have a substantial impact on the result of the trial in light of the weighty evidence of the petitioner's

guilt.

   The Court concludes that the state court's rejection of the petitioner's claim of jury

contamination did not contravene or unreasonably apply federal law.

### B.

   In his second claim, the petitioner asserts that his trial counsel provided ineffective assistance

of counsel when he failed to request a jury instruction on the offense of simple possession of a lesser

amount of cocaine.  The petitioner supports this claim by pointing to the discrepancy in weights

recorded by the officer who conducted a field test of the drugs and the prosecutor's expert witness

who weighed the drugs at a laboratory.

The state court of appeals determined that not asking for an instruction on a lesser offense based on the weight of the drugs was a reasonable trial strategy by defense counsel. The court reasoned that asking the jury to decide that the petitioner possessed a smaller quantity of drugs would have undermined the defense that the petitioner's girlfriend slipped the drugs into his pocket. That court also concluded that the defense was not supported by the facts, since the petitioner admitted to the arresting officer that he possessed two ounces of cocaine.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel in a federal habeas proceeding. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if the attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. However, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. The Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 689 (internal quotes omitted)). Counsel's conduct is entitled to the strong presumption that it falls within the wide range of reasonable professional assistance, and the petitioner must overcome the presumption that the conduct "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

-13-

*also Higgins v. Renico*, 470 F.3d 624, 632 (6th Cir. 2006) (observing that "[s]uch [strategic] choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference").

The Court is satisfied that the state courts properly applied the *Strickland* standard to the petitioner's ineffective assistance of counsel claim. During trial, Deputy Thomas did testify that he weighed the cocaine seized from the petitioner twice but could have been inaccurate in his measurements. However, an expert witness from the Michigan State Police crime laboratory also weighed the two submitted amounts of cocaine. He testified that the cocaine weighed 50.57 grams, and that his scales were tested for accuracy every morning. The petitioner testified that he told the police that he possessed two ounces of cocaine. He also testified that he knew there are about 25 grams of cocaine in an ounce. Defense counsel's decision not to request a jury instruction that took issue with the amount of the drugs found on the petitioner was a reasonable approach to the case. Perhaps there would have been an effective way to offer both theories at the same time, that is, that the drugs did not belong to the petitioner, and even if they did they did not weigh as much as the State claimed. But multiple defenses can sometimes be viewed by a jury with skepticism, and the state court's invocation of that possibility is not beyond the realm of reason. After all, the Supreme Court has insisted that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 130 S.Ct. at 1862 (internal citations and quotation marks omitted).

III.

-14-

The state courts decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 19, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 19, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL